Good morning, Your Honor. My name is Lisa Bazant. I'm a CJA panel member out of Billings, Montana. I represented Mr. Morrison at his sentencing and then on his appeal. Mr. Morrison is a registered sex offender. He was convicted in Montana of a sex offense in state court in 1993. When he was released from prison, he knew exactly what his registration requirements were. And as the record will reflect, he changed his registration validly over 12 times preceding this indictment. He changed his residence when he was within the overpass motel from one room to another. I think we know what the facts are here. The biggest problem that I think you have here is he had a court trial, right?  There are going to be certain factual findings that are made in a court trial that we're going to have to give some deference to. I understand what you're talking about from the standpoint, let's just say, this isn't the biggest case in the world as far as that goes. And in terms of that he did change his residence a number of times. But even if we were to feel that the judge, we wouldn't have done the same, you've still got that standard of review which makes it difficult. Or you still have certain prosecutorial decisions to go forward with something. So give me your best argument in light of factual findings. Not the argument that, gee, they shouldn't have prosecuted him. Gee, this guy, you know, he was pretty good about the whole time about registering and all of that. Give me your best argument how to reach the result that you want and still remain, for us to remain faithful to the standards of review when someone has a court trial. Thank you. The judge's findings of fact number 17, 18, 25, and the conclusion of law number 14 and 15 are clearly erroneous. Those are that he notified the Bighorn County that he was changing his residence by living in a shelter until the power came back on. And that was the last notification of residence in the Bighorn County Sheriff's Office. And on the findings of the conclusions of law that were an interested party to check his registration, they would find that he was registered at a shelter. That is clearly erroneous. And here we have a big conflict between what is required apparently under SORNA on changing a residence and what is required by Montana state statute which is changing a residence. In Montana we have a statute, and at this time there was no SORNA compliant registration requirements involved in Montana. All we have are our state statutes. Under 4623.502.7, a change of a residence is any place an individual regularly resides that can be identified by a street address. That can be a house, an apartment, a hotel, a motel. It can be a recreational vehicle if you tell them I'm parked at the Walmart parking lot on King Avenue. Excuse me, Counselor, didn't your client notify the Sheriff that he would be living at the shelter? He notified the Sheriff's Office in Bighorn County that, yes, he would be staying at the shelter until the power came back on at his residence two miles east of Busbee, which was the family home that he had been validly registered at and remained validly registered at until his arrest in April of 2010. But he stayed at the shelter, did he not, until someone came and took him out? Well, he stayed at the shelter until he was able to go back to his residence. My point here is under statute, under Subpart 7B, a shelter cannot be a residence. Under state statute, by definition, a shelter can't be a residence. Even if he had stayed there six months? Well, a shelter is not designed for a stay of six months. I know, but he overstayed his stay anyway at the shelter, did he not? No, Your Honor, I don't think that he stayed at the shelter six months. Well, he initially expected to reside there just briefly, but then would it be, but I guess the issue, would that become his residence once the stay exceeded a few days or weeks?  What do you mean by definition? Does the statute say shelters or the term residence exclude shelters? Yes, it does, Your Honor. 4623- Give me that, the citation. 4623-502-7B. Now, but the, but you're saying some people, including district court. Well, first of all, he, I don't know if it's called registration, but he informed, right, the authorities that he was moving to the shelter. Yes, Your Honor, he did. So you don't, so you don't regard that, well, you're saying it's clear error to regard that as a change of registration. Yes, Your Honor, it is. Is that right? Because under the Montana statute, that cannot be a residence. Exactly, Your Honor. This informal notice that he gave to Bighorn County, now understand, this is an individual who's been doing this for a while. He stops by, he says, the power's out in my residence. He heats by a wood stove. It's freezing cold. I've got to go someplace that is habitable. He goes to a residence. But did he notify anyone when he moved out of the shelter back to his home? He was still validly registered at his home two miles east of Busbee, which is what the government's exhibit for the sexual offender registry. I see. While he was in the shelter, he was, his residence was his home, are you saying? He was still validly registered at his home. This courtesy informal notice to Bighorn County was nothing more than that. It was, I'm going to go over there for a few days until the power comes back on, and then I'm going to be back. Do you know how long he stayed at the shelter? I do not, Your Honor. I believe it was just a couple days, but I do not recall from my reading of the transcript. Well, it seemed a lot longer to me, but let me ask you now about, he also now, I don't know if he resided, but he stayed for a while at his place of employment, right? Right, the Morris Salvage Yard. Otto Salvage Yard. Right, he did. Tell me about that. During the period from roughly March, April, February, there was a time when he, his employer, and another individual were collecting cars. They had a crusher coming through, and so they would collect junk cars and have them ready for when this crusher came through, and it would make a lot of money, and they would work tirelessly around the clock. I believe in the judge's findings, however, he just said he would occasionally stay at that residence. He would only keep a change of clothes, and he wouldn't keep his stuff, and other people would be dropping him back off at the road that would lead to his house two miles east of Busby so he could stay there. But, yes, he did on occasion sleep at the residence for the Morris Salvage Yard. Are you contesting any findings that the district court made with regard to his stay at the Salvage Yard? No, well, no, Your Honor, I'm not, because the judge didn't make any findings that he changed his residence to the Morris Salvage Yard. The judge's findings were that he changed his residence to the shelter. And what I would say is this brief, courtesy notation to Bighorn County, to a shelter without any registered address, just a shelter, followed by an email notation, is not consistent with what had been the procedures for modifying a residence. Introduced at trial were actual forms that, I've changed my residence to the Overpass Motel to two miles east of Busby, or I'm going to a treatment facility, or I'm going to Wyoming for a little while. I mean, there were actual paperwork that went along. And as I said, the Montana statutes require that you regularly reside someplace that can be identified by an address, and it cannot be a shelter. But Morrison recognizes that Sorna requires that he must not later than three business days after a change of name, residence, employment, or student status, appear in person and inform the jurisdiction of all changes. Morrison recognizes that. Absolutely, Morrison recognizes. What we have here is a conflict between what Sorna recognizes as a change of residence and what Montana recognizes as a change of residence. And specifically, the two people that testified at trial, Ms. Hurt and Ms. Spencer, those two people specifically said, he's compliant. We never changed his residence. Do you want to save a little time for rebuttal? I'm down to 30 seconds, Your Honor. I don't think that's enough really to save. If anyone has any questions, otherwise I'll be done. Okay. Thank you. Good morning. May it please the Court and Counsel, I'm Marcia Hurt, and I'm an assistant U.S. attorney from the District of Montana. I tried the bench trial below and wrote the brief on appeal. May I just ask a question of my mind? Sure. Montana law says a shelter cannot be a residence. What's your response to that? There's a specific Montana separate section that deals with people who are either transient or homeless that requires a different way of checking in and notifying the sheriff's office. So it doesn't fit the Montana definition of what a residence might be, but there is a specific other way that transients, people who stay in the shelter or who live on a park bench, check in. And so, yes, it may not fit the definition she's talking about, but we're talking about a SORNA definition, not a Montana state definition. Well, if there's a, which apparently seems to be here, a conflict between the state statute and SORNA, are you saying SORNA just overrides it? Well, I don't think there's so much a conflict between SORNA and Montana statute because both SORNA and Montana have specific ways in which a person who is homeless or who is transient, who is moving through and staying at a shelter for a period of time, can validly register. It just isn't under the specific section that Ms. Gazant was talking about. In the trial court, did Morrison try to make the case that he registered as a transient? Morrison always took the position that he lived two miles east of Busbee. That was his only argument. Now, if that's the case and the shelter is not a resident, why isn't that a valid registration? Because when he moved to the shelter, that was a valid registration, both under Montana law and under SORNA. It is a change of where he laid his head every night to sleep, and it's valid. But I thought you agreed that the Montana law excluded the shelters. Under their definition of residents, but not under their definition of when you have to register and how you have to register. Under Montana law, which isn't what we're talking about in this case, but under Montana law, when you are a transient or living in a shelter, then you have to check in in person every 30 days. It's a more onerous requirement than what SORNA would put on a defendant. But he's not charged with violating that. He's not. He is absolutely not. The question is, did he violate either the state or the federal statute by moving to the shelter because his electricity was off? And not, or can he still, under that circumstance, maintain that his residence was his Busbee home? He cannot, Your Honor. And he actually stayed much longer than several days. If you look at his own testimony in the record under ER 132, he lived at the shelter for three and a half weeks until his one sister came and got him, and then he stayed with her for a period of time and never called Bighorn County again to say, I've moved back home or I've moved to my sister's residence. You might get a little sense from the transcript that this was a bit of a contested trial in the sense of. I get the sense it's cutting it pretty fine. I don't think it was cutting it pretty fine, Your Honor, and here's why. The judge made a specific finding of fact that Mr. Morrison had registered with the Bighorn County that he was moving to the shelter, and then he never told them where he was going from there. Didn't say, I'm moving to the George Morris Salvage Yard, which is on the other side of Busbee. He didn't say he was going back home. Nobody knew where he was. And under SORNA, that's the point, is so that when someone goes out to check and see, where is this registered convicted rapist, where is he laying his head at night? Where should the people in the neighborhood know where this person is? And under Mr. Morrison's actions, it was at the shelter in Bighorn County, and he no longer resided there. He had an obligation to let Bighorn County know that he had moved somewhere else. Now, the interesting part was during trial he made a comment and made a claim that he had, in fact, called Bighorn County the day after he left the shelter and left a message with somebody and told them that he was moving back home when, in fact, he wasn't moving back home to Busbee. He was living with his sister. The judge did not find that to be credible. And I think some of that was because he had also written a letter to a person who was going to testify, basically saying, let's get our stories straight. He had also forged a receipt saying he lived at the George Morris Salvage Yard so that he could get fuel oil delivered there. And the judge did not basically credit his testimony in terms of being reliable or being credible because the entire record of where he registered and changed his registration was introduced, and there was absolutely nothing in the Bighorn County file that he had called, visited, followed up in any fashion to say, I'm no longer at the shelter. I'm back, you know, either at this residence or living somewhere else. And the judge's specific finding that you will have to find is clearly erroneous, is that his last registered address was at the shelter. And both Bighorn County through Teresa Hurt on ER 33 and Dawn Spencer, who ran the Montana Sex Offender Registry, in her testimony under ER 76 and 77, said his last address is at the shelter, and that was where they had him living. And so the problem with the argument here is that you have to find that those facts are clearly erroneous in the judge's decision in the judgment. Which finding is it where the court finds that he registered at the shelter and the shelter was his last registered? It's ER 276, I'm sorry, 277, and it's finding number 25. 25? Judge Shandstrom found the defendant's last known registered residence was the shelter in Hardin. After January 2010 and until the time of his arrest, the defendant did not register his residence outside of Busbee or the Morris Auto Salvage Yard as his residence. So just so that I understand both of your arguments, that the appellant is saying that the shelter cannot be a residence, and what you're saying is that that doesn't in any way alleviate what you have to do in terms of notification where you are. It may make a difference in terms of how you have to notify them or how often, but they still have to know where you are. Absolutely. Except her argument in the brief was not that the shelter didn't qualify as a residence under Montana law. That was never raised. What her argument in the brief was was that his notification was some sort of, I think, a courtesy informal notice is what she called it, and that it wasn't a change in residence, and that he always lived at his Busbee residence, which we know is inaccurate. We know that by his own testimony, for at least three and a half weeks, he lived at the shelter because the power was off. So is, you know, obviously, is your argument that basically because this was a court trial and because of the findings that the judge made, regardless of whether if we think that this is sort of technical or minimal or whatever, legally we can't go there? Unless you find those facts to be clearly erroneous based on the entire record at the trial. Well, it's not just clearly erroneous. It doesn't, whether or not the district court applied the correct legal definition of a residence come into play to. It does. And I think that the district court absolutely did under the SORNA guidelines, not talking about Montana law because that wasn't the case we were trying. The SORNA guidelines specifically note that transient or homeless sex offenders have to provide some sort of more or less specific place where they habitually live, i.e. a certain part of the city that's their habitual locale, a park, or a spot on the street, if you look at the sex offender, the national guidelines. Well, this being a SORNA case, then, I mean, should we like just disregard all of the Montana registration statutes? The Montana registration requirements don't have anything to do with the case that's being brought under SORNA. So, in other words, let's say hypothetically that Morrison, Ms. Bazant, is correct that under Montana law, a shelter cannot be a residence, all right? But just assume that hypothetically. Even if that were the case, it wouldn't make any difference in the SORNA prosecution. No, it would not. It just actually ups his requirement under Montana law to check in more often than if he, you know, stayed all the time at his residence two miles east of Busby, he would have a certain period of time. Well, is there any kind of like a state of mind requirement in SORNA? Knowingly, that he knowingly has to fail to register. Don't you think he would say, well, you know, hypothetically again, well, you know, I thought by complying with Montana law, I was complying with SORNA. Wouldn't that negate knowingly? And the judge found that he did know what his requirement was and knew that he needed to update because he'd actually registered before in Billings at the shelter and knew what he needed to do there. So is that where the credibility finding against Mr. Morrison comes into play? I think so. Mr. Morrison even said things at the trial like, I've never seen this indictment until today. You never gave my attorney discovery. I mean, all these wild claims on the stand, and the judge took all those into account, took into account the letter that he had written to the person who was going to testify, took into account the fact that he was by his own admission using meth for a significant period of that time, a number of those things in making that credibility determination. I see I'm almost out of time unless there are any questions. Okay. There don't appear to be. Thank you. Thank you. You have 30 seconds if you want to use it. You don't have to. The only thing I would point out, ladies and gentlemen, Your Honors, is that looking at the testimony of both Don Spencer and Teresa Hurt, who both said he's still validly registered at two miles east of Busby. They never noted it, and these are the people that are in charge of doing the registration. If they don't note it, then how is it that this individual somehow knowingly can violate something that they're not even charging as a change of residence, and that's the only statute we have in effect. We don't have SORNA-compliant statutes yet in Montana. We don't have it, and until we have it, how can he knowingly register? Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Nelson, Tashima, Callahan